# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dolores Bassett                    :

                             :

        v.                  : No. 145 C.D. 2016

                             : Argued: November 14, 2016

The Borough of Edgeworth    :

Shade Tree Commission      :

and Borough of Edgeworth,    :

            Appellants      :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE JOSEPH M. COSGROVE, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED: January 24, 2017**

The Borough of Edgeworth Shade Tree Commission (Commission) and the Borough of Edgeworth (Borough, collectively Appellants) appeal from a January 4, 2016 order of the Court of Common Pleas of Allegheny County (Trial Court) that reversed the decision of the Commission denying Appellee Dolores Bassett a permit to remove three pin oak trees from her property. For the reasons that follow, we affirm the Trial Court.

Bassett is a long-time resident of the Borough who resides in a house at 432 Oliver Road. A sidewalk runs on Bassett's property adjacent to Oliver Road, and the three pin oak trees at issue in this appeal are located in the four-to-five foot grassy strip between the sidewalk and the curb, referred to as the "curb lawn."

Bassett filed the tree removal application at issue here on May 4, 2015, but the history between Bassett and the Borough regarding her sidewalk and the trees in her curb lawn begins several years earlier. In July 2013, the Borough sent Bassett a "Sidewalk Repair Notice" informing her that several of the concrete slabs of her sidewalk were a dangerous "trip hazard" that required replacement. (Reproduced Record (R.R.) 344a-346a.) The notice advised that if Bassett did not replace the defective slabs, the Borough would do it for her, bill her for the work and file a lien against her property if the bill was not paid. (R.R. 344a.) Bassett made the repair shortly after the notice was issued. (Testimony of Borough Manager, Trial Court Hearing Transcript (H.T.) at 5, R.R. 215a.)

On September 16, 2013, Robert Crusan, the Borough's professional arborist consultant, visited Bassett's property and performed an inspection of the five trees in her curb lawn at the request of the Borough Manager, Martin McDaniel. (Sept. 17, 2013 Report at 1, R.R. 348a.) In his report on the visit, Crusan rated the three pin oak trees as being in good condition with trunk diameters of approximately 26 to 28 inches and height of 55 to 65 feet. (*Id*.) Crusan noted that the pin oaks did contain some deadwood branches with diameters up to 2 inches, but he did not see any evidence of root decay or decay or weakness in the main stems that would indicate a high potential for failure. (*Id*. at 1-2, R.R. 348a-349a.) However, Crusan stated in his report that he had observed that there were surface roots greater than 2 inches in diameter that had migrated under the sidewalk into Bassett's front lawn and that several of the older sidewalk slabs would likely be required to be replaced within a few years because of root damage. (*Id*.) Crusan stated that pin oaks are now rarely planted as street trees as a result of their large trunks and root flares and aggressive roots, and he advised

that should any underground utility or curb replacement work be required, the three pin oaks would have to be removed. (*Id*. at 2-3, R.R. 349a-350a.) In addition to the pin oaks, Crusan examined two additional trees in Bassett's curb lawn, a silver maple, which was rated as being in poor condition, and a red maple, rated as being in fair condition but later downgraded to poor following a subsequent inspection. (*Id*. at 1, R.R. 348a; Testimony of Borough Manager, Trial Court H.T. at 40, R.R. 250a.) Bassett eventually removed the two maple trees after the Borough sent her notices that these trees were at "'high risk' for failure during high winds, and heavy snow and ice conditions." (May 7, 2014 Letter from Borough Manager, R.R. 365a; Testimony of Borough Manager, Trial Court H.T. at 47, R.R. 257a; Nov. 6, 2013 Letter from Borough Manager, R.R. 387a-388a.)

In January 2014, Crusan sent the Borough Manager another letter in which he indicated that he had met with Bassett and examined the three pin oaks again and he concluded that the trees were still healthy and structurally sound, although he reiterated that he observed roots approximately two inches in diameter that had migrated under her sidewalk into her front lawn. (R.R. 357a.) At a public meeting the following month, the Commission considered a written request by Bassett that she be given permission to remove the three pin oaks. (Minutes of Feb. 14, 2014 Commission Meeting, R.R. 359a.) According to the minutes of the meeting, the Commission determined that the trees were healthy, mature trees that "enhance the community's beauty by providing a fully canopy effect" and that any problems caused by the roots "are a nuisance that must be dealt with by means other than by tree removal." (*Id*.)

On May 4, 2015, Bassett filed a formal application with the Commission for permission to remove the three pin oak trees, citing her need to

continually replace sidewalk slabs, her increased liability insurance, the damage caused by the roots to her front lawn and the fact that other property owners had been permitted by the Commission to take down healthy trees on their curb lawns. (R.R. 4a-8a.) A public hearing was held on the application on June 18, 2015. Bassett did not personally appear at the hearing, but her attorney appeared and testified on her behalf,[1] and Crusan testified that the trees remained in healthy condition. (Commission H.T. at 12-27, R.R. 51a-66a.).

At the outset of the hearing, the Commission Chairman explained the subject of the hearing as follows:

> Our rule tonight is to understand the issue at hand. The issue at hand, [Bassett's attorney] is a representative of our neighbor at 432 Oliver regarding three pin oaks that are in question. The resident is requesting removal of those three trees. I would ask that our discussion focus on that particular issue. Not sidewalks, not trees in the park, not trees around the Borough, but the three specific trees at our neighbor's house at 432 Oliver; okay?

(Commission H.T. at 3, R.R. 43a.) The Chairman further stated that the Commission would be analyzing the application under the standard of Section 95-5(G) of the Borough of Edgeworth Code (Edgeworth Code), which relates to the required removal of "afflicted" trees in the public right-of-way where those trees are harmful to public safety and welfare, threaten other trees, plants and shrubs in the Borough or have negative impact on the aesthetic qualities elsewhere along such right-of-way. (*Id*. at 4, R.R. 44a; Edgeworth Code § 95-5(G), R.R. 375a.)

In a July 23, 2015 written decision, the Commission denied the application, finding that the overwhelming evidence demonstrated that the three

---

[1] After a discussion of the propriety of an attorney testifying in his client's case, Bassett's attorney was sworn in by the Commission. (Commission H.T. at 5-10, R.R. 45a-50a.)

4

pin oak trees are healthy and sound. (Commission Decision, Findings of Fact ¶¶9-13.) The Commission concluded that Bassett therefore did not establish under Section 95-5(G) of the Edgeworth Code that the three pin oak trees are "afflicted," that the trees threaten other plants, trees or shrubs or that the trees are harmful to the public safety and welfare, and the Commission declined to grant Bassett a permit to remove the trees. (*Id.* at 2.)

Bassett appealed to the Trial Court, requesting that the Commission's decision be reversed or, in the alternative, that a *de novo* hearing be held. On October 27, 2015, the Trial Court issued an order directing that a *de novo* hearing be conducted on December 15, 2015. At the *de novo* hearing, the Borough Manager testified that Bassett's sidewalk was currently in satisfactory condition and did not require replacement. (Trial Court H.T. at 39, R.R. 249a.) The Borough's arborist consultant, Crusan, testified as an expert that the three pin oaks were in the same healthy condition as when he first inspected them in September 2013. (*Id.* at 91-93, R.R. 301a-303a.) Crusan stated that while the trees are not planted at the suggested 40-foot spacing and he would not advise planting the trees in their current location today, he would not recommend removal of the trees as long as they are healthy. (*Id.* at 93-95, 103-04, R.R. 303a-305a, 313a-314a.) Bassett presented as an expert Michael Tomana, a Borough resident, environmental lawyer, president of the local historical society and consultant to a landscape design company on native trees, who opined that the pin oak trees were planted too closely together and in too narrow of a curb lawn so that the sidewalk slabs will continue to buckle and the sidewalk will "disappear" eventually as the trees age. (*Id.* at 70-77, 81, 86, R.R. 280a-287a, 291a, 296a.)

5

On January 4, 2016, the Trial Court issued an order reversing the Commission and ordering the Commission to issue a permit to remove the three pin oak trees. The Trial Court held that neither Section 95-5(G) of the Edgeworth Code, which the Commission applied in its decision, nor subsection (D) of that same section, which Bassett contended was applicable to her application, provides any criteria for the Commission to consider when faced with a request by a Borough resident to remove a healthy tree. (Jan. 4, 2016 Order ¶¶1-3; March 24, 2016 Rule 1925 Opinion at 3-4.) However, the Trial Court found that Bassett would satisfy subsection (G) of Section 95-5 because the sidewalk was damaged and thus harmful to the public safety and welfare. (Jan. 4, 2016 Order ¶¶6-9; March 24, 2016 Rule 1925 Opinion at 6.) Furthermore, the Trial Court found that Bassett would also satisfy the standard of subsection (D) relating to permits for planting trees in the public right-of-way because the trees were planted too close together contrary to "generally acceptable land development and arboricultural principles." (Jan. 4, 2016 Order ¶¶4-5, 9; March 24, 2016 Rule 1925 Opinion at 5-6; Edgeworth Code § 95-5(D), R.R. 374a.)

At the heart of this appeal is the issue of whether the Commission applied the proper standard of the Edgeworth Code to Bassett's application.[2] The rules of statutory construction employed by the courts of the Commonwealth are equally applicable to local ordinances as well as statutes enacted by the General Assembly. *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015); *In re Holtz,* 8 A.3d 374, 378 (Pa. Cmwlth. 2010).

---

[2] This Court's scope of review when the trial court has conducted a *de novo* review of a local agency appeal is limited to a determination of whether the lower court committed an error of law or abused its discretion. *Park Home v. City of Williamsport*, 680 A.2d 835, 837 (Pa. 1996); *Taylor v. Harmony Township Board of Commissioners*, 851 A.2d 1020, 1024 n.3 (Pa. Cmwlth. 2004).

The primary intent of statutory interpretation is to determine the intent of the enacting body. 1 Pa. C.S. § 1921(a); *Kohl*, 108 A.3d at 968. A regulation's plain language generally provides the best indication of legislative intent, and, thus, statutory construction begins with the examination of the text of the regulation. *Kohl*, 108 A.3d at 968; *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board,* 918 A.2d 171, 176 (Pa. Cmwlth. 2007) (*en banc*), *aff'd* 974 A.2d 1144 (Pa. 2009).

The Commission's authority to regulate shade trees in the Borough arises from the Borough Code, which provides that a borough council may, by ordinance, "establish a shade tree commission and delegate to the shade tree commission the exclusive care, custody and control of shade trees and authorization to plant, transplant, remove, maintain and protect shade trees on the streets and highways in the borough." 8 Pa. C.S. § 2721(a). A shade tree commission "may make and enforce regulations for the care and protection of shade trees," provided that "[n]o regulation may be in force until it has been approved by the council and enacted as an ordinance." 8 Pa. C.S. § 2721(b).

Chapter 95 of the Edgeworth Code sets forth that the Borough Manager and the Commission, which consists of three uncompensated citizens of the Borough, have the power to enter property to maintain plants, shrubs and trees, to require the planting or removal of trees within the public right-of-way and to assess costs to property owners for work done by the Borough. (R.R. 372a-376a.) Section 95-5 of the Edgeworth Code relates to the maintenance of plantings along

7

public rights-of-way[3] in the Borough; most relevant to this case are subsections (D) and (G) of this provision, which provide that:

> D. Permit. No tree shall be planted, transplanted or removed in or from any public right-of-way without a written permit from the Commission, such permit to designate the type of tree and place where such tree is to be planted or the place from which it is to be removed. No such permit shall be granted unless written application is made to the Commission on a form acceptable to the Commission. In determining whether to grant a permit for the planting of a tree, the Commission shall follow generally acceptable land development and arboricultural principles and shall apply such principles in a fair and uniform manner throughout the Borough.
>
> ...
>
> G. Required removal. The Commission may require the removal of any afflicted tree in any public right-of-way in the Borough upon its determination that such tree threatens other plants, shrubs or trees in the Borough, is harmful to public safety or welfare or has a negative impact on the aesthetic qualities elsewhere along such right-of-way. The expense of this removal shall be borne by abutting property owners in accordance with Subsection C hereof.

(R.R. 374a-375a.)

We agree with the conclusion of the Trial Court that neither of these two provisions clearly sets standards applicable to Bassett's tree removal application. Section 95-5(D) sets forth a permit requirement for the removal, planting and transplanting of trees in the public right-of-way and requires that applications for these permits be made in writing. However, the only standard set

---

[3] The Edgeworth Code defines the public right-of-way to include any easement area along the cartway of a street or highway in the Borough and the area between the cartway and the nearest parallel public sidewalk. (Edgeworth Code § 95-5(A), R.R. 374a.)

forth in this subsection, requiring the Commission to follow "generally acceptable land development and arboricultural principles" and to apply "such principles in a fair and uniform manner throughout the Borough," relates only to the Commission's consideration of a permit for the planting of a tree. (R.R. 374a.) These criteria are not extended to the consideration of an application for a permit by a property owner for the removal of a tree.

Section 95-5(G) does contain criteria for the Commission to consider in determining whether trees should be removed from a public right-of-way, but subsection (G) applies only by its plain text to situations where the Commission may "*require* the removal of any afflicted tree in the public right-of-way." (R.R. 375a) (emphasis added.) In this matter, the Commission did not initiate the removal process of the three pin oaks, but instead Bassett made the request to remove the three trees. Furthermore, Bassett's application was not based on the fact that the trees were "afflicted" in any way and instead was based on the damage that was being done to the sidewalk, which presented a threat to public safety and which threat Bassett was financially responsible in ameliorating.

The Commission applied Section 95-5(G) to Bassett's case even though it did not fall within that provision. This violates the "fundamental rule" enunciated by our Supreme Court "that an ordinance must establish a standard to operate uniformly and govern its administration and enforcement in all cases, and that an ordinance is invalid where it leaves its interpretation, administration or enforcement to the unbridled or ungoverned discretion, caprice or arbitrary action of the municipal legislative body or of administrative bodies or officials." *Appeal of O'Hara*, 131 A.2d 587, 593-94 (Pa. 1957); *see also Kohl*, 108 A.3d at 971; *Orwell Township Board of Supervisors v. Jewett,* 571 A.2d 1100, 1103 (Pa.

9

Cmwlth. 1990). The Commission here did not follow a uniform standard that applies to all permits for removal of a tree, but instead imposed a standard that applied only to the very different situation of requiring removal of a tree.

Appellants nevertheless argue that the Commission, as the agency responsible for regulating the plants, trees and shrubs in the Borough, is entitled to deference in determining what portion of the Edgeworth Code was applicable to Bassett's application, citing the well-established rule that zoning hearing boards are entitled to great weight and deference as a result of their knowledge and experience in interpreting local zoning ordinances. *See, e.g., Smith v. Zoning Hearing Board of Huntingdon Borough,* 734 A.2d 55, 57-58 (Pa. Cmwlth. 1999). However, this deference does not permit a local agency to stray from the plain text of the ordinance, which the Commission has done here. As this Court has explained, such bodies "must not impose their concept of" the ordinance and must apply the terms of the regulation "as written rather than deviating from those terms based on an expressed policy." *Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 364 (Pa. Cmwlth. 2015) (quoting *Greth Development Group, Inc. v. Zoning Hearing Board of Lower Heidelberg Township,* 918 A.2d 181, 187 (Pa. Cmwlth. 2006)). Moreover, the Commission's application of the gap in the Edgeworth Ordinance to deny Bassett's application runs counter to the well-established principle in land use cases that ambiguity in an ordinance must be construed in favor of the landowner. *Kohl*, 108 A.3d at 968.

Appellants further argue that the Trial Court improperly engaged in a *de novo* review of Bassett's appeal from the Commission's decision and that if the Trial Court had applied the traditional deferential appellate standard under the

Local Agency Law it would have found that Bassett had waived her challenge to the Commission's application of Section 95-5(G) of the Edgeworth Code to her case.[4] Appellants argue that the Trial Court's order granting a *de novo* hearing was improper because the Commission permitted Bassett to admit all 38 exhibits attached to her application and did not limit testimony or argument related to the health of the three pin oak trees, the damage done by the trees' roots to Bassett's sidewalk and the Commission's authorization for the removal of healthy trees by another Borough property owner. We do not agree.

Pursuant to Section 754 of the Local Agency Law, 2 Pa. C.S. § 754, where a full and complete record was made before the agency, the court must limit its review to determining whether constitutional rights were violated, the agency complied with the procedures set forth in the Local Agency Law, an error of law was committed, or the findings by the local agency are supported by substantial evidence. 2 Pa. C.S. § 754(b); *Johnson v. Lansdale Borough*, 146 A.3d 696, 711 (Pa. 2016). On the other hand, where a full and complete record was not made before the local agency, the court of common pleas may hear the appeal *de novo* or may remand to the agency for further fact-finding. 2 Pa. C.S. § 754(a); *Johnson*, 146 A.3d at 711.

A "full and complete record" has been defined by this Court as "a complete and accurate record of the testimony taken so that the appellant is given a

---

[4] Section 753(a) of the Local Agency Law, 2 Pa. C.S. § 753(a), provides that all legal questions, except constitutional challenges, which may be raised in the first instance in the court of common pleas, must be raised at the agency level or deemed waived. *Id*.; *Boron v. Pulaski Township Board of Supervisors*, 960 A.2d 880, 885 (Pa. Cmwlth. 2008) (*en banc*). Under Section 753(a), however, a court of common pleas may entertain a legal issue that was not raised below "upon due cause shown." 2 Pa. C.S. § 753(a); *Lower Providence Township v. Nagle*, 469 A.2d 338, 342 (Pa. Cmwlth. 1984).

base upon which he may appeal and, also, that the appellate court is given a sufficient record upon which to rule on the questions presented." *Kuziak v. Borough of Danville*, 125 A.3d 470, 475 (Pa. Cmwlth. 2015) (quoting *In re Thompson,* 896 A.2d 659, 668 (Pa. Cmwlth. 2006)). A record may not be "considered incomplete based solely on a party's failure to present evidence available at the hearing," and remand is not proper to allow a party "another opportunity to prove what he or she should have proved in the first place." *Kuziak*, 125 A.3d at 475-76 (quoting *Retirement Board of Allegheny County v. Colville*, 852 A.2d 445, 451 (Pa. Cmwlth. 2004)). The determination of whether a local agency's record is adequate is a matter committed to the discretion of the court of common pleas.[5] *Kuziak*, 125 A.3d at 475 n.3; *City of Philadelphia v. Murphy*, 320 A.2d 411, 414 (Pa. Cmwlth. 1974).

We conclude that the Trial Court's order to conduct a *de novo* hearing was not an abuse of discretion. The Trial Court based its decision to order a *de novo* hearing on the fact that the Commission Chairman had limited evidence to "the three specific trees at our neighbor's house" and "[n]ot sidewalks, not trees in the park, not trees around the Borough" and later admonished Bassett's attorney "let's talk about Mrs. Bassett's trees" and not the regulation of shade trees in a neighboring municipality.[6] (March 24, 2016 Rule 1925 Opinion at 2-3 (citing

---

[5] An abuse of discretion is shown where the trial court misapplies the law or its decision is manifestly unreasonable, arbitrary or capricious, or was motivated by partiality, prejudice, bias or ill will. *James Corp. v. North Allegheny School District*, 938 A.2d 474, 483 n.7 (Pa. Cmwlth. 2007).

[6] The Trial Court ruled that the Commission's decision denying Bassett's applications would also be defective under the deferential appellate standard of Section 754 of the Local Agency Law because the Commission analyzed Bassett's application under the clearly inapplicable Section 95-5(G) of the Edgeworth Code and therefore the Commission's decision was "not in accordance with law." (March 24, 2016 Rule 1925 Opinion at 3-4 (quoting 2 Pa. C.S. § 754(b).) The Trial Court additionally found that the Commission was only nominally applying Section

Commission H.T. at 3, 13, R.R. 43a, 53a).) The Trial Court concluded that the Commission excluded evidence from at least three relevant topics: evidence related to Bassett's sidewalk, trees of the same size with equally aggressive roots that had been permitted to be removed and evidence related to the authorization of removal of other trees in the Borough that were not "afflicted." (*Id*.) While Bassett was able to present a substantial amount of evidence before the Commission, the Trial Court did not err in holding that the Commission did not permit development of a full and fair record.

Because the Trial Court's *de novo* review of Bassett's appeal from the Commission's determination was proper, Appellants' argument that Bassett waived her argument regarding the application of Section 95-5(G) to her permit application is unavailing because the Trial Court was authorized to undertake an independent analysis of the legal issues applicable to Bassett's application, including a consideration of the propriety of the standards in the Edgeworth Code regardless of whether they were litigated before the Commission. *See Medical Shoppe, Ltd. v. Wayne Memorial Hospital,* 866 A.2d 455, 464 (Pa. Cmwlth. 2005) (reviewing tribunal undertaking *de novo* review has discretion "to admit additional evidence that it deems relevant and necessary to make its own findings of fact and conclusions of law"); *see also Manor v. Department of Public Welfare,* 796 A.2d

95-5(G) to Bassett's application based on the testimony of the Borough Manager at the Trial Court hearing that the Commission looks at each case on its own merits, considering such factors as the type of tree and the location of the tree on the property. (*Id*. at 4-5 (citing Trial Court H.T. at 19, R.R. 229a).) The Trial Court found that the consideration of the tree species and location of planting constituted an error of law by the Commission, violating the Borough Code's proscription that "[n]o regulation [of a shade tree commission] may be in force until it has been approved by the council and enacted as an ordinance." (*Id*. at 5 (quoting 8 Pa. C.S. § 2721(b)).) Because we hold that the Trial Court did not abuse its discretion by holding a *de novo* hearing, we do not address the Trial Court's alternate reasoning as to why the Commission's decision was erroneous as a matter of law.

13

1020, 1029 n.12 (Pa. Cmwlth. 2002); *Codorus Stone & Supply Co., Inc. v. Kingston*, 711 A.2d 563, 566–67 (Pa. Cmwlth. 1998).

Accordingly, because Section 95-5(G) does not apply to Bassett's application for permission to remove the trees, the Trial Court correctly held that the Commission erred in denying Bassett a permit to remove the three pin oak trees from her curb lawn. We consequently affirm the order of the Trial Court reversing the decision of the Commission to deny her permission to remove the three trees.

_____
JAMES GARDNER COLINS, Senior Judge

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dolores Bassett : 
: 
v. : No. 145 C.D. 2016
: 
The Borough of Edgeworth : 
Shade Tree Commission : 
and Borough of Edgeworth, : 
Appellants : 

## **O R D E R**

AND NOW, this 24th day of January, 2017, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge