IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sarah Vasky,  :
          Appellant  :
            :  No. 560 C.D. 2018
          v.  :
            :  Submitted: December 11, 2018
Zoning Hearing Board of Newton  :
Township  :
            :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED: January 8, 2019

Sarah Vasky (Objector) appeals from the March 14, 2018 order of the Court of Common Pleas of Lackawanna County (trial court) affirming the decision of the Zoning Hearing Board of Newton Township (Board). The issue in this case is whether a subdivision of property would result in a private driveway servicing more "building lots" than what is permitted under the Ordinance. In pertinent part, section 306.10 of the Ordinance states that a private road "shall not serve more than three (3) building lots as authorized by the Board of Supervisors." The Zoning Ordinance of Newton Township (Ordinance), §306.10.

Robert and Ann Cosner (Applicants) own 25.6 acres of property located at 1682 Forest Acres Drive in Newtown Township (Property). In March 1989, Applicants entered into a 99-year lease agreement with Commonwealth Telephone

Company, now known as Frontier Communications (Frontier), granting Frontier the right to use 7,560 square feet of land on the Property to store utility infrastructure, along with an easement. On this portion of the Property, Frontier erected an open-air structure, referred to as a utility shelter or pavilion, which contains communication equipment. Objector owns property adjacent to and at the rear of the Property. Applicants, Frontier, and Objector all use a private driveway that runs through the Property to access arterial roadways. (Trial court op. at 1; Board's decision at 1-2; Reproduced Record (R.R.) at 95a-101a, 104a-07a.)

Applicants propose to subdivide their Property into two parcels and sell 3.19 acres to Walter and Bonnie Janus (Purchasers), who intend to build a residential dwelling on their portion of the Property. Under the terms of the anticipated subdivision, the part of the Property owned by Purchasers would also be serviced by the private driveway running through the Property. (Trial court op. at 1; Board's decision at 2.)

In June 2017, Applicants submitted a petition to the Board seeking the grant of two variances, including a request that the Board interpret the Ordinance and determine whether the proposed subdivision would necessitate a variance pursuant to section 306.10.[1] After conducting two hearings, the Board noted that it was not clear whether Applicants would use the driveway after the subdivision, but apparently assumed this to be the case. (Board's decision at 22, Findings of Fact (F.F.) No. 15.) Even so, the Board stated, without reference to provisions in the Ordinance, or further elaboration, that "[t]he small square footage in the easement [to Frontier] does not

---

[1] The other request for a variance involved distance requirements with respect to Purchasers' proposed residential dwelling and the placement of accessory structures. The Board granted Applicants a variance for the purpose and this aspect of the Board's decision has not been appealed.

2

comply with any 'building lot' in the Township that otherwise would allow development within the parameters of the Ordinance." (Board's decision at 4.) As a matter of fact, the Board found: "The utility easement owned by [Frontier] is not a building lot as contemplated by the Ordinance, but rather is nothing more than an easement to an equipment pavilion for the utility company." (F.F. No. 16.) The Board concluded, "[T]he use of the private drive by the utility company, [Frontier], is not servicing a 'building lot' . . . and therefore is not to be counted as one of the users of the driveway." (Board's Conclusion of Law (COL) Nos. 9-10.) Accordingly, the Board determined that the proposed subdivision would not require a variance from section 306.10 of the Ordinance because only three "building lots" would be serviced by the private driveway, *i.e.*, the lots for Applicants, Objector, and Purchasers.

Objector appealed to the trial court, which observed that the Ordinance does not provide a definition for the phrase "building lot," but contains denotations for the terms "building" and "lot." (Trial court op. at 2.) Objector argued that the Ordinance was clear and without ambiguity and argued syllogistically: Frontier's utility shelter met the definition of a "building" under the Ordinance; the shelter satisfied the criteria of and is located on a "lot" under the Ordinance; therefore, the utility shelter was a "building lot" for purposes of the Ordinance. In rejecting this reasoning, the trial court perceived the sole issue before it as whether the Ordinance "unambiguously prohibits the proposed activity [and] would allow the Township to constrain [Applicants'] use of their property." (Trial court op. at 5.) The trial court concluded that, under the facts and circumstances of this case, the Ordinance did not. The trial court viewed Objector's argument as requesting the court to "try to define the term 'building lot' by 'shoehorning' it into the definitions of other defined terms." (Trial court op. at 5.)

3

**Discussion**

Before this Court,[2] Objector contends that the Board and trial court erred in determining that the portion of the Property used by Frontier is not a "building lot" and that the utility shelter should have been included as one.

Entitled "Rear Lot Parcels," section 306.10 states in its entirety:

> All lots shall front on a public road in order to prevent parcels of land from becoming land-locked. In cases where parcels of land are located behind existing approved building lots along public roads, a right-of-way may be established to allow access to the aforementioned rear parcels of land, and which shall be approved by the Board of Supervisors, on an individual basis. The right-of-way shall not be less than fifty (50) feet in width. It shall originate along a public state or township road and shall be designated **as a private road, with public access at all times**. It shall be maintained and kept accessible by the property owners serviced by said roadway. **Said private road shall not serve more than three (3) building lots as authorized by the Board of Supervisors** in accord with this Section 306.10. Each lot shall front on the right-of-way of the designated private road and shall conform with the Building Codes, Zoning and Subdivision Ordinance.

Ordinance, §306.10; R.R. at 162a (emphasis added).

In section 202 of the Ordinance, the "Definitions" section, a "building" is described as:

---

[2] Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Hamilton Hills Group, LLC v. Hamilton Township Zoning Hearing Board*, 4 A.3d 788, 792 n.6 (Pa. Cmwlth. 2010).

4

> **Any structure having a roof supported by columns or walls**, **used or intended to be used for** the shelter [or] **enclosure of** any persons, animals, or **property**. When such a structure is divided into separate parts by one or more unpierced walls extending from the ground up, each part is deemed a separate building, with the exception of meeting minimum side yard requirements.

Ordinance, §202; R.R. at 159a (emphasis added).

Further, section 202 of the Ordinance provides that a "lot" is:

> **Land occupied** or to be occupied **by a building** and its accessory buildings, or by a dwelling group and its accessory buildings, together with such open spaces as are required under the provisions of this Ordinance, having not less than the minimum area and width required by this Ordinance, and having its principal frontage on a street or on such other means of access as may be determined in accordance with the provisions of law to be adequate as a condition of the issuance of a zoning permit for a building on such land.

Ordinance, §202; R.R. at 160a (emphasis added).

Quoting the definition of "building" in the Ordinance, Objector asserts that the utility shelter is a structure that "has a roof and is supported by columns" and is "intended to be used for the shelter [or] enclosure of any . . . property." (Objector's brief at 12.) Quoting the definition of "lot" in the Ordinance, Objector asserts that the part of the Property where the utility shelter is situated constitutes "[l]and occupied . . . by a building." (Objector's brief at 13.)

In addition, Objector argues that Frontier has a lease agreement with Applicants for full use, enjoyment, and possession of real property and that an easement is only an incidental part of the agreement. From these premises, Objector deduces that a variance is needed for Purchasers' acquisition of some of the Property because there would be a total of four building lots utilizing the private driveway.

5

In interpreting a zoning ordinance, we initially look at the plain language of the text, *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015), and are "guided to construe words and phrases in a sensible manner, utilize the rules of grammar and apply their common and approved usage, and give undefined terms their plain, ordinary meaning." *Adams Outdoor Advertisement, LP v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006). In conducting this analysis, the Court is mindful "that the setting in which language is used informs our understanding of the particular language employed," *Kohl*, 108 A.3d at 969, and "that the meaning of words may be indicated or controlled by those words with which they are associated," *Commonwealth ex rel. Fisher v. Philip Morris, Inc.*, 4 A.3d 749, 756 n.9 (Pa. Cmwlth. 2010).

As a general matter, the courts afford the interpretation proffered by a zoning hearing board and/or a zoning officer some degree of deference. *See Kohl*, 108 A.3d at 968-69. However, if that interpretation is inconsistent with the plain language of the ordinance, or where the meaning of the ordinance is unambiguous, the "interpretation carries little or no weight." *Malt Beverage Distributors Association v. Pennsylvania Liquor Control Board*, 918 A.2d 171, 176 (Pa. Cmwlth. 2007) (en banc). This is because "a zoning board is not a legislative body, and it lacks authority to modify or amend the terms of a zoning ordinance." *Greth Development Group, Inc. v. Lower Heidelberg Township Zoning Hearing Board*, 918 A.2d 181, 187 (Pa. Cmwlth. 2006); *see Shvekh v. Zoning Hearing Board of Stroud Township*, 154 A.3d 408, 414 (Pa. Cmwlth. 2017).

As mentioned above, the phrase "building lot" is not explicitly defined in the Ordinance. Where a term in a zoning ordinance is undefined, the term must be

given its usual and ordinary meaning, which may be gleaned by consulting dictionary definitions and employing common sense. *Kohl*, 108 A.3d at 969; *Kratzer v. Board of Supervisors of Fermanagh Township*, 611 A.2d 809, 813 (Pa. Cmwlth. 1992). According to Webster's dictionary, a "building lot" is defined as "a surveyed and bounded plot of land that is set aside for a building." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 292 (1986). Importantly, this dictionary definition comports with, and provides a cohesive element to, the descriptive designations that the Ordinance provides for a "building" and a "lot." Viewing these terms and definitions together and in a sensible manner, we conclude that a "building lot" is unambiguously denoted as having three subcomponents: (1) a piece or parcel of "land" (2) "occupied or to be occupied" by a "structure having a roof supported by columns," and (3) "used or intended to be used for the shelter [or] enclosure" of things such as "property." Ordinance, §202.

Here, the Board apparently determined that the "[t]he small square footage" on which the utility shelter is situated takes it outside the purview of a "building lot." (Board's decision at 4.) However, neither the tribunals below nor the parties cite any provision of the Ordinance that could support the proposition that dimensional criteria are relevant to deciding whether a portion of land constitutes a "building lot." Upon our review, we can find none. Instead, besides the definitions for "building" and "lot," the Ordinance contains definitions for the terms "lot area," "lot corner," "lot coverage," "lot line," "lot of record," and "lot width," and none of these terms contains a reference or statement that quantifies the nouns in numerical expression. (R.R. at 160a.) Consequently, so long as a parcel of property has a structure specified in the Ordinance that is used or intended to be used for a designated purpose, that parcel will be deemed to be a "building lot" under the

7

Ordinance. The Board, however, did not issue any findings of fact as to whether Frontier's utility shelter is a "structure having a roof supported by columns" and is "used or intended to be used for the shelter [or] enclosure" of things such as "property." Ordinance, §202. "Where the record is not adequate for appellate review, the case should be remanded to the Board to develop the record and make the necessary findings." *Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 370 (Pa. Cmwlth. 2015).

Nonetheless, the Township argues in its brief that the Board reached the correct result, contending that Frontier's utility shelter is not located on and does not meet the definition of a "lot" in the Ordinance. The Township submits that there is only one lot because Applicants' residence is the "principal building" or "structure" on the Property, while the shelter is an "accessory building," "accessory structure," or an "accessory use." (Township's brief at 8-9.) While a "lot" is signified in the Ordinance to include a "building and its accessory buildings," Ordinance, §202, and the Ordinance generally permits accessory uses, the Board did not address this issue or make any findings related to the issue. Thus, a remand for factual findings is necessary on this basis as well. *See Riverfront Development Group*, 109 A.3d at 370.

Moreover, the Board did not make any findings or address the related issue of whether Applicants' property agreement with Frontier was one which resulted in Applicants effectuating a "subdivision" of the Property per the Ordinance, which is highly relevant in determining whether the utility shelter is located on its own distinct "lot." The Ordinance defines "subdivision" as, "The division or redivision of a lot, tract, or parcel of land by any means into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease, transfer of ownership or building or

8

lot development." (R.R. at 161a.) Relatedly, section 306.9 of the Ordinance describes "subdivision of lot" as follows: "When a new lot or lots are formed from part of a parcel of land, the separation shall be effected in such a manner as not to impair any of the provisions of this Ordinance. The old and new lot shall meet all the lot requirements as specified in the Ordinance." Ordinance, §306.9; R.R. at 162a. Consequently, this is an issue that the Board may need to resolve on remand, depending upon its determination concerning whether the utility shelter falls within the above definition.

For these reasons, we vacate the March 14, 2018 order of the trial court and remand to the trial court with direction to remand to the Board for further proceedings, including a new hearing if necessary, consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sarah Vasky,                              :
              Appellant            :
                                   :     No.  560 C.D. 2018
            v.                          :
                                   :
Zoning Hearing Board of Newton            :
Township                                  :
                                   :

## ***ORDER***

AND NOW, this 8th day of January, 2019, the March 14, 2018 order of the Court of Common Pleas of Lackawanna County (trial court) is hereby vacated.  The case is remanded to the trial court with direction to remand the matter to the Zoning Hearing Board of Newton Township (Board).  On remand, the Board may conduct another hearing, if necessary, and shall dispose of the petition filed by Robert and Ann Cosner in a manner consistent with this opinion.

Jurisdiction relinquished.

 

_____
PATRICIA A. McCULLOUGH, Judge