# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bethlehem Manor Village, LLC and   :
Pennsylvania Venture Capital, Inc.,   :
                   Appellants   :
  :
              v.   :  No. 1792 C.D. 2019
  :  Argued: November 9, 2020
Zoning Hearing Board of the   :
City of Bethlehem   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge (P.)
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: January 29, 2021**

Bethlehem Manor Village, LLC (BMV) and Pennsylvania Venture Capital, Inc., an agent for BMV (together, Landowners), appeal from the Order of the Court of Common Pleas of Northampton County (common pleas) upholding the Decision of the Zoning Hearing Board of the City of Bethlehem (Board). The Board denied Landowners' appeal from the Zoning Officer of the City of Bethlehem's (Zoning Officer) denial of a Zoning Permit Application (Application). In the Application, Landowners sought a zoning permit to build what they described as a private, free-standing, inpatient, acute psychiatric hospital (Proposed Use) on a property located in the City of Bethlehem's (City) I-Institutional Zoning District (I District) under the Codified Zoning Ordinance of the City of Bethlehem, CITY OF BETHLEHEM,

PA, ZONING ORDINANCE (2008), (Ordinance) in effect at the time of the Application. Zoning Officer denied the permit, finding that the Proposed Use was not permitted because it was a treatment center, not a hospital. After a two-day hearing, the Board agreed the Proposed Use would not be a hospital, finding it would not be licensed by the Pennsylvania Department of Health (Department). The Board, instead, determined it would be a treatment center notwithstanding that it could not qualify as a treatment center for state regulatory purposes. The Board also held that the Proposed Use was not otherwise permitted in the I District as a related treatment facility, which, Landowners asserted, was an alternative use for which the Proposed Use could qualify. On appeal, Landowners argue the Board Decision affirming the denial of the Application should be reversed because the Board: (1) applied an overly narrow standard and scope of review in deciding Landowners' appeal of Zoning Officer's decision; (2) erred in narrowly construing ambiguous and undefined provisions of the Ordinance, respectively, the definition of "hospital" and the phrase "related treatment facility," to find that the Proposed Use was not a permitted use; and (3) erred in finding that the Proposed Use was a treatment center. Landowners maintain that had the Board conducted a proper review of this matter and engaged in a proper construction of the Ordinance's provisions, it would have found that the Proposed Use was a permitted use in the I District.

## I.    Background

*A. The Proposed Use and the Relevant Ordinance Provisions.*

Landowners own a five-acre property (Property) at 1838 Center Street in the City on which they seek to construct the Proposed Use. On September 12, 2013,

2

the City Planning Commission (Commission) approved Landowners' Land Development Plan (Plan) with conditions (Plan Approval). (Reproduced Record (R.R.) at 25a.) Relevantly, the Commission conditioned approval on Landowners obtaining "any and all approvals under the . . . Ordinance, including . . . that the proposed plan is a permitted use at the [P]roperty" and on Landowners "not operat[ing] a Treatment Center at this site as defined by the . . . Ordinance." (*Id.*)

"Treatment centers" were not, and are not, permitted in the I District. At the time of the Plan Approval and Application, this use was defined as:

> (a) A use (**other than** a prison or **a hospital**) providing housing for 3 or more unrelated persons who need specialized housing, treatment and/or counseling because of:
>
> 1. criminal rehabilitation, such as a criminal halfway house, or facility for housing of persons judged to be juvenile delinquents, or a criminal work release or pre-release facility;
>
> 2. current addiction to a controlled substance that was used in an illegal manner or alcohol; and/or
>
> 3. a type of mental illness or other behavior that causes a person to be a threat to the physical safety of others.

Ordinance § 1302.127 (emphasis added); (R.R. at 72a). However, Landowners had described the Proposed Use as a hospital. At the time of the Plan Approval and Application, the Ordinance allowed "Hospital or Surgery Center or Related Testing and Treatment Facilities" as permitted uses in the I District. Ordinance, § 1305.01(c); (R.R. at 75a). Also at that time, the Ordinance defined "hospital" as "[a] building(s) which is licensed by the . . . Department . . . as a [h]ospital, and which involves the diagnosis and treatment of human ailments." Ordinance,

3

§ 1302.54; (R.R. at 72a). The remaining terms in this use category were not defined.[1]

### B. *The Application and Zoning Officer's Denial.*

In accordance with the Plan Approval, Landowners submitted the Application to Zoning Officer on July 11, 2018. The Application stated the "Existing/Proposed Use" was a "Hospital (see cover letter)." (R.R. at 2a.) Per the cover letter, Landowners sought a determination that the Proposed Use, a "Freestanding Private Inpatient Acute Hospital," was "a permitted use" as required by the Plan Approval. (*Id.* at 1a.) Attached to the Application were: materials submitted to the Department, which were under review by that agency; architectural plans for the Proposed Use; and a site plan. (*Id.*) The materials that had been submitted to the Department's Division of Safety Inspection were labeled the "Program Narrative for [the] Valley Behavioral Health Hospital," a $14 million project that would "provide Inpatient Behavioral Health Services" with the goal of

---

[1] The City has since amended the Ordinance to change these definitions to explicitly exclude a behavioral health facility and psychiatric hospital, and to eliminate the "or Related Testing and Treatment Facilities" language from the permitted use category Landowners rely upon in their arguments. (R.R. at 128a-30a, 292a, 301a, 317a.) The Ordinance now defines "[h]ospital," at Section 1302.57, as

> [a] building(s) which is licensed by the . . . Department . . . as a [h]ospital, and which involves the diagnosis and treatment of human ailments, and which may include behavioral health facilities and psychiatric hospitals operated in accordance with all laws and regulations, provided the behavioral health facilities occupy no more than 25% of the floor space of the hospital facilities directly associated with the diagnosis, care, treatment, and sleeping facilities of patients.

(*Id.* at 128a, 292a.) "Treatment [c]enter" was amended, at Section 1302.138, to include the following: "(e) A behavioral health facility and/or psychiatric hospital meeting the requirements of all laws and regulations shall qualify as a Treatment Center." (*Id.* at 129a, 301a.)

4

"becom[ing] a premier Acute Inpatient Hospital provider" that "[p]rovide[s] Psychiatric Crisis assessment assistance for the region" with "[s]eamless discharge planning with outpatient local providers." (*Id.* at 199a-202a.) The Proposed Use would "[i]nstitute [the] Best Management Practices Standards" of a variety of organizations or agencies, would have "[c]ontractual agreements with both [the] public and private market," and would partner with local hospital networks. (*Id.* at 202a, 208a.) There would be 84 rooms for acute inpatient services provided in a secure setting to non-pediatric patients, and it would include an "adult inpatient dual [diagnosis] program" and a "23-hour observation unit." (*Id.* at 205a, 207a, 212a, 221a.) Additional information regarding the operation of the Proposed Use was set forth in the Application. (*Id.* at 199a-222a.)

By letter dated July 20, 2018, Zoning Officer denied the Application. Zoning Officer stated that she reviewed the materials submitted and the Ordinance's applicable definitions and did not find the Proposed Use to meet the definition of a "hospital." In the letter, Zoning Officer interchangeably described the Proposed Use as both a "treatment facility" and a "treatment center," although "treatment center" is a defined use, which is not permitted in the I District, and "treatment facility" is not defined and under certain circumstances may be permitted in the I District. (*Id.* at 32a.) Zoning Officer concluded that because the Proposed Use was a secure facility "***for the safety of everyone***," it was clear "that the facility will be used as a treatment facility by providing services to a person with a type of mental illness or other behavior that causes a person to be a threat to the physical safety of others." (*Id.* at 32a-33a (emphasis in original).) Next, Zoning Officer indicated the term "Adult inpatient Dual Dx program" meant "when someone experiences a mental illness and a substance use disorder

simultaneously" and concluded this "clearly show[ed Landowners were] proposing a treatment facility for a current addiction to a controlled substance[] that was used in an illegal manner or alcohol within the meaning of [the Ordinance])." (*Id.* at 33a.) Zoning Officer also relied on a "Management Plan" belonging to an unrelated drug and alcohol residential treatment facility, not part of the Application, which provides voluntary detoxification, treatment, and services, that she concluded "mirror[ed]" the Application. (*Id.*) Zoning Officer concluded "the [P]roposed [U]se does not appear to qualify as a hospital use under . . . the . . . Ordinance," because "the building would not be 'licensed by the . . . Department . . . ,' even though the care may involve the diagnosis of human ailments," and "because the [P]roposed [U]se complie[d] with the more specific requirements for a treatment center, the use [was] more correctly categorized a treatment center instead of the more general regulations of a hospital." (*Id.* at 34a.) Zoning Officer further explained, without citation to authority, that "the licensing prerequisite applicable to all hospitals under the [O]rdinance cannot be met since the . . . Department . . . does not issue licenses for the kinds of psychiatric care or structure planned at this location." (*Id.*) For these reasons, Zoning Officer denied the Application because "the [P]roposed [U]se is a treatment center," which also made the Proposed Use "inconsistent with" the condition in the Plan Approval requiring that Landowners "not operate a [t]reatment [c]enter . . . ." (*Id.* (citation omitted).)

### C. Appeal to the Board.

Landowners appealed to the Board, arguing that Zoning Officer erred and abused her discretion by concluding "that the use described by the materials and plans submitted with the . . . Application was a 'treatment facility' and not a

6

'hospital' under the . . . Ordinance" and that the "proposed private psychiatric hospital is not a residential treatment facility . . . ." (*Id.* at 45a.) The Board held two days of hearings, at which Landowners questioned Zoning Officer as on cross-examination, and presented the testimony of three consultants who assisted in designing the Proposed Use and in applying for the needed licenses and permits. The City and a group of nearby residents (Objectors) appeared and questioned the witnesses but did not otherwise present evidence. Other people at the hearing questioned the witnesses and spoke in opposition to the Proposed Use being located in this zoning district.

Zoning Officer testified about how she reached her conclusion that the Proposed Use was a treatment center, not a hospital. After reviewing the Application's materials and the Plan Approval, Zoning Officer explained her understanding of the services the Proposed Use would provide and the Proposed Use's physical facilities. Citing various Department regulations relating to the licensing of hospitals that she had reviewed, Zoning Officer determined the Proposed Use would not be eligible for a Department license because she believed the Application was missing certain required information. For example, Zoning Officer stated the information provided did not show that there would be physicians working on the premises. (Board Decision, Findings of Fact (FOF) ¶¶ 45-46; R.R. at 570a-71a.) Zoning Officer indicated that Landowners "did not submit any kind of license, either initial or continuing, for a qualified facility" or evidence that the Proposed Use would be eligible for a license. (*Id.* ¶¶ 47, 57; R.R. at 572a.) According to Zoning Officer, the use more appropriately fell into the definition of treatment center, a conclusion she reached by reviewing, among other things, other unrelated applications submitted for drug and alcohol treatment

7

facilities at other properties. (R.R. at 525a-26a, 531a-32a.) Had she not concluded the Proposed Use was a treatment center, Zoning Officer stated she would have issued the permit. (*Id.* at 526a.) Zoning Officer acknowledged that she reviewed the Application with several other City employees, including the City's Director of Planning and Zoning, who, Zoning Officer testified, reviewed all of Zoning Officer's decisions and to whom Zoning Officer deferred. (*Id.* at 519a-22a.) Zoning Officer conceded that she was not familiar with the licensing of treatment centers as compared to hospitals and she "Google[d]" the term "dual diagnosis." (*Id.* at 529a-30a.) Zoning Officer also agreed that, under the Department's regulations, licenses were not issued until after a facility is built and inspected. (*Id.* at 590a.)

Landowners called Dwayne Jones, a consultant who performed a feasibility study for the Proposed Use and assisted in completing applications submitted to the Department. (FOF ¶¶ 61-64.) He explained his experience in seeking licensing of psychiatric hospitals and familiarity with the various state licensing agencies that could be involved. According to Mr. Jones, the application submitted to the Department was for a hospital, not a treatment center, which is separately regulated. (*Id.* ¶¶ 67-69; R.R. at 605a.) In addition to approval from the Department, Mr. Jones explained that the Pennsylvania Department of Human Services (DHS) also participated in the process. (R.R. at 608a-09a.) He explained the materials submitted with the Application reflected that the Proposed Use was a specialized hospital and that Zoning Officer's interpretation of a dual diagnosis program was incorrect because such programs do not necessarily involve an addiction diagnosis. (FOF ¶ 71; R.R. at 618a-19a.) Mr. Jones testified a lock down or secure facility, like the Proposed Use, could not be a treatment center

8

because state law requires those centers to be voluntary. (R.R. at 619a.) On cross-examination, Mr. Jones indicated the Department will issue "[a]n approval" but not a license, which will be issued by DHS. (FOF ¶¶ 76-77; R.R. at 624a, 646a.) Based on the Ordinance's definition of treatment center, Mr. Jones agreed that the Proposed Use could be viewed as a treatment center if it was not a hospital. (R.R. at 654a, 657a.)

Landowners next presented Dominic Marfisi, who holds a Doctorate in Health Psychology and a Master's Degree in Counseling Psychology, and who was accepted as an expert witness in licensing for hospitals and treatment centers. (FOF ¶¶ 80, 84.) Dr. Marfisi testified he has been consulting on the applications to the Department and other licensing agencies and was familiar with the Ordinance's definitions for a hospital and a treatment center, as well as with the materials submitted with the Application, which he indicated described a hospital. (*Id.* ¶¶ 85-88.) He disagreed with Zoning Officer's interpretation of the phrase "dual diagnosis," as patients in a psychiatric hospital would not have a primary addiction diagnosis and that term included non-addiction-related diagnoses. (*Id.* ¶¶ 89-95; R.R. at 668a-69a, 688a-89a.) Dr. Marfisi described the process of obtaining approvals and licensing for the Proposed Use, noting that licensing could come from a variety of state agencies depending on the services being offered, and would not be determined until a later time. (*Id.* at 672a, 704a, 706a.) He would not agree that the Department would not license the Proposed Use, indicating that "it could be licensed by the Department . . . in addition to [DHS]." (*Id.* at 694a.) Dr. Marfisi testified that all hospitals, including the Proposed Use, have a Department license to perform blood work, urinalysis, and testing for pregnancy and communicable diseases. (FOF ¶ 96; R.R. at 699a.) He explained that a drug

9

and alcohol treatment center would be licensed by a third agency, the Department of Drug and Alcohol Programs, and there had been no discussions about the Proposed Use being so licensed. (FOF ¶¶ 98-99; R.R. at 700a-01a.)

Landowners last presented the testimony of Muhamad Aly Rifai, M.D., a board-certified psychiatrist and internist who participated in preparing the applications to the Department and who was accepted as an expert witness in psychiatry with experience in the licensing of treatment centers and psychiatric hospitals in Pennsylvania, but not specifically in the City. (FOF ¶¶ 114, 118, 121.) Dr. Rifai testified how patients would come from other area hospitals. (R.R. at 825a-26a, 837a-40a.) Dr. Rifai opined that, to his knowledge, it was not possible to obtain a license to operate a psychiatric hospital until after it was constructed. (FOF ¶¶ 125; R.R. at 753a-54a, 824a-25a.) He testified that the Proposed Use could not be operated as a treatment center because a treatment center cannot be a locked down facility but must allow the residents to leave at any time, whereas residents being treated in a psychiatric hospital must be in a locked unit, such as the Proposed Use. (FOF ¶¶ 127-28; R.R. at 756a.) Dr. Rifai testified that those who would be treated at psychiatric hospitals are prohibited from being admitted to a treatment center but acknowledged that they could have drug and addiction issues. (FOF ¶¶ 129, 135, 137, 146; R.R. at 759a.) With regard to the Application and attached materials, Dr. Rifai stated the facility described therein would be "immediately recogniz[able]" as a psychiatric hospital by a physician or anyone familiar with hospital construction. (*Id.* at 762a, 781a.) He disagreed with Zoning Officer's conclusions regarding the meaning and impact of dual diagnoses, the use of secured rooms and other security features, and, ultimately, the nature of the Proposed Use. (*Id.* at 763a-70a, 778a-81a.) According to Dr. Rifai, multiple state

10

agencies can license healthcare facilities, like a psychiatric hospital, and a determination on what licenses are needed will depend on a facility's nature. (FOF ¶ 145; R.R. at 754a-55a.) Dr. Rifai testified that up to four or five licenses would be required for the Proposed Use and that the Department has recently licensed a "freestanding psychiatric hospital" in the Philadelphia area. (FOF ¶ 152; R.R. at 822a-24a.)

On cross-examination, Dr. Rifai explained that Mr. Jones' testimony that the Department would not license the Proposed Use was based on Mr. Jones' experience, but that the Department would be issuing a license for the Proposed Use "in terms of the construction and the specialized services that would be provided." (*Id.* at 783a.) In particular, Dr. Rifai indicated the Proposed Use may have certain types of treatments and areas that "may require a license from the . . . Department" in addition to DHS. (FOF ¶ 139; R.R. at 783a, 798a-99a.) He stated that the Application set forth that there would be medical staff working at the Proposed Use, as required by the Department's regulations, and the fact that the Proposed Use would be accredited by certain professional organizations, which would occur only upon compliance with and satisfaction of regulatory criteria, meant that it would meet the regulatory requirements of a hospital that Zoning Officer indicated, in her opinion, were missing. (FOF ¶¶ 141-43; R.R. at 789a-91a, 831a-32a, 840a.) Other requirements, Dr. Rifai explained, were no longer imposed. (R.R. at 790a-91a.) He indicated medical care would occur at the Proposed Use through the administration of medication, psychotherapeutic services or psychotherapy, occupational therapy, and physical therapy. (*Id.* at 792a.) Dr. Rifai testified there was a potential that the Proposed Use would be affiliated with area hospitals. (FOF ¶ 144; R.R. at 796a-97a.) When asked where in the

11

Application submitted to Zoning Officer it mentions licensing by the Department, Dr. Rifai stated that "the heading of the [DHS] application[, which was submitted with the materials attached to the Application,] says[] the Pennsylvania Department of Health" and that he did "not know what's a better indicator" than an application filed with the Department related to the construction of a psychiatric hospital. (*Id.* at 804a-05a.)

During Landowners' evidentiary presentation, the City raised a continuing objection to Landowners presenting any evidence that had not been included in the Application, as that was what Zoning Officer reviewed in making her decision. (*Id.* at 609a-10a, 634a-35a, 640a-41a, 672a-73a, 683a-84a.) The City, and later Objectors, contended the only issue was whether Zoning Officer's decision was erroneous based **only** on the information presented in and with the Application. These objections led to a discussion "as to what the Board's role is in this" appeal. (*Id.* at 610a-11a.) Landowners asserted they should be able to explain, through the presentation of additional evidence, why Zoning Officer's "layperson[]" conclusions that the Proposed Use is a treatment center, and not a hospital, were incorrect. (*Id.* at 611a, 613a.) The City argued that if evidence or information was not presented to Zoning Officer in the Application, the Board could not consider it because "[t]he record [wa]s closed" with regard to the Application. (*Id.* at 611a-12a.) Objectors asserted if Landowners sought to add information to the Application, then they should have to submit a new application under the amended terms of the Ordinance. (*Id.* at 614a-15a.) The Board overruled the objections, and its solicitor explained that this was "probably the end of that inquiry in [the Board's] mind. That there are other things, but we're not going to talk about those other things because [Zoning Officer] didn't see them." (*Id.* at 615a.)

At oral argument before the Board, Landowners argued the Board was acting in an appellate capacity as it was reviewing whether Zoning Officer's conclusions were erroneous, which required the Board to interpret the Ordinance. However, Landowners asserted that because Zoning Officer consulted sources outside the Application to resolve ambiguities in the Ordinance's definitions, Landowners had the right to present extrinsic evidence to explain why Zoning Officer's interpretation of and reliance on those outside sources was incorrect. (*Id.* at 885a-87a, 899a, 910a-11a.) Landowners further asserted the Proposed Use could fall into a different permitted use, the broader "Hospital or Surgery Center or **Related Testing and Treatment Facilities**" use set forth in the Ordinance's use table. (*Id.* at 75a, 886a (emphasis added).) Noting that only "hospital" was defined, Landowners argued that, per *Manor Healthcare Corporation v. Lower Moreland Zoning Hearing Board*, 590 A.2d 65 (Pa. Cmwlth. 1991), the other terms should be construed in Landowners' favor. The City argued that the Board had not held an evidentiary hearing on an issue in its exclusive jurisdiction, such as an application for a variance or a special request, but this was an appeal and, citing the standard of review that a court of common pleas uses to review zoning hearing board decisions, the Board could only determine whether Zoning Officer erred as a matter of law and whether her findings were supported by substantial evidence. (*Id.* at 896a-97a.) It asserted there was no ambiguity in the Ordinance, and Zoning Officer's interpretation and conclusions were supported by the plain language. (*Id.* at 899a-900a.) As for Landowners' alternative argument that the Proposed Use was permitted as a related treatment facility, the City argued this was not included in the Application or raised while the record was open and, therefore, could not now be asserted. (*Id.* at 904a.) Objectors argued the matter was a simple one: the

13

Board was reviewing Zoning Officer's decision based only on what information she had in the Application and, based on those materials, Zoning Officer's decision was not erroneous. (*Id.* at 907a-08a.) Following an executive session, the Board voted three to two to deny Landowners' appeal. (*Id.* at 916a-17a.)

Thereafter, the Board issued its Decision, in which it made 158 findings of fact and explained why it denied Landowners' appeal. In the findings of fact, the Board summarized the testimony of the witnesses, including some of Dr. Marfisi's and Dr. Rifai's statements about licensing and the types of services that would be provided in the Proposed Use. For example, the Board summarized Dr. Marfisi's testimony as being that "[a]ll hospitals including the [P]roposed [Use] have a license to perform blood work, urinalysis, pregnancy testing and communicable disease testing that is reportable to the [Department.]" (FOF ¶ 96.) But the Board then found that "[t]he . . . Application submitted to . . . Zoning Officer did not include this detail." (*Id.* ¶ 97.) It also summarized Dr. Rifai's testimony as being that "[i]f the proposed facility does provide neuromodulation treatment for depression and anxiety, that component would need to be licensed by [the Department]" and that "[t]he proposed facility may require as many as four (4) or five (5) licenses, including from the Department [and other state agencies]." (*Id.* ¶¶ 139, 152.) But, the Board, again, found that "[t]he . . . Application submitted to . . . Zoning Officer did not include this detail." (*Id.* ¶¶ 140, 153.)

The Board stated it was sitting in its appellate capacity and the question before it was "[d]oes the decision set forth by . . . Zoning Officer . . . represent[] an abuse of discretion and an error as a matter of law?" (Board Decision at 20-21.) It acknowledged that Zoning Officer consulted materials outside the Application and sought input from other City officials, but held this did not change its review of

14

Zoning Officer's decision, which was whether, "within the bounds of the document she issued," she committed an error of law, and that such consultation was merely to "reaffirm a conclusion that appeared to be clear under" the Ordinance's language. (*Id.* at 23-24.)

The Board disagreed with Landowners' arguments that Zoning Officer erred because, in Landowners' opinion, the issue of licensure cannot be critical because no license, beyond construction approval, would be given until after the facility was constructed. (*Id.*) The Board concluded Landowners' contentions were not persuasive, in view of the plain language of the Ordinance, because they "did not in [the] . . . Application nor through [their] expert witnesses at the hearing clearly establish that the facility me[t] the definition of 'Hospital'[] because it will not be licensed as a hospital by the Department . . . "; rather, a psychiatric hospital "is simply approved by the [DHS]." (*Id.* at 22-24 (internal quotation and citation omitted).) In short, the Board concluded that "[t]he materials constituting the [A]pplication failed to contain information demonstrating that all of the requirements for a 'hospital' under the regulations of the . . . Department . . . were met" and "did not describe any particular treatments requiring licensure by the . . . Department." (*Id.* at 27.) As for Landowners' alternative argument that the Proposed Use was permitted as a related treatment facility, the Board noted such use was not suggested in the Application. The Board reasoned that because there would be no surgery performed, the Proposed Use was not a surgery center to which there would be a related treatment facility. (*Id.* at 23.) It did not independently consider whether the Proposed Use would be a "related treatment facility" to a hospital. (*Id.*) The Board explained Landowners' reliance on *Manor Healthcare* was misplaced because in that case, unlike here, the term "hospital"

15

was not defined by the applicable zoning ordinance. In addition, the Board held that Zoning Officer's conclusion that the Proposed Use was a treatment center was "superfluous" and was made to support "her ruling that it is not a [h]ospital." (*Id.* at 21-23.) However, it subsequently explained why the Proposed Use fell within the definition of treatment center and "no facts offered by [Landowners] altered that fact." (*Id.* at 26.) That the facility would be locked down and, therefore, not a treatment center under state regulations, was not determinative in the Board's view because the Ordinance did not reference any such requirement. (*Id.* at 27.)

### D. Appeal to Common Pleas.

Landowners appealed to common pleas, arguing that the Board erred and abused its discretion in finding no error in Zoning Officer's decision. Landowners argued that: the Board erred in applying an appellate standard and scope of review in reviewing Zoning Officer's decision and limiting the evidence to only that included with the Application; the Proposed Use was permitted under the broader permitted use category of "Hospital or Surgery Center or Related Testing and Treatment Facilities"; and the Proposed Use does not qualify as a treatment center under the Ordinance. (Common Pleas Opinion at 6-7 (citing Landowners' Brief (Br.) to common pleas at 9).) Common pleas disagreed with Landowners that any error or abuse of discretion by the Board occurred.

First, common pleas held there is a distinction between the Board's original jurisdiction review and its appellate capacity, citing Section 909.1(a) of the Pennsylvania Municipalities Planning Code (MPC)[2] and this Court's decision in

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 87 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1(a).

16

*Orange Stones Co. v. Borough of Hamburg Zoning Hearing Board*, 991 A.2d 996, 998-99 (Pa. Cmwlth. 2010). Common pleas further held that the issue of whether the Board applied an improperly narrow review of Zoning Officer's decision was "largely inconsequential given that the Board accepted additional evidence and made findings that are supported by substantial evidence and not contrary to law." (*Id.* at 11.) Common pleas found that the Board did not disregard the testimony of Landowners' witnesses concerning licensing because, after summarizing the testimony, the Board "concluded that none of [Landowners'] witnesses definitively testified that the facility would be licensed by the Department . . . but instead, a psychiatric hospital would be approved by [DHS]." (*Id.* at 14.) Common pleas noted that the evidence was consistent that licensing would not occur until after a facility is constructed, and that a license from the Department "may be" or "could be" issued depending on the "structure, programming and services being offered." (*Id.* at 14-17.) The Board considered this evidence in its role as fact finder, common pleas held, and gave it the weight the Board thought it deserved, a decision not subject to common pleas' review. (*Id.* at 19.)

Second, common pleas held the Application and Landowners' appeal to the Board contained no reference to the alternative permitted use of a "related treatment facility," and, therefore, the issue was waived. (*Id.* at 20.) In the event it was not waived, common pleas offered its own interpretation as to why this argument lacked merit. Common pleas reasoned that there was no indication that a business relationship existed or would exist between the Proposed Use and a hospital as there was "no indication that the entities will share ownership, management, oversight, licensing, employees, logos, names, protocols, insurance,

17

or anything that would typically indicate that business entities were 'related.'" (*Id.* at 23-24.)

Third, common pleas explained the Board had to afford deference to Zoning Officer's interpretation that the Proposed Use was a treatment center unless it was clearly erroneous, which it was not because it was consistent with the Ordinance's plain language. (*Id.* at 12 (citing *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968-69 (Pa. Cmwlth. 2015); *McIntyre v. Bd. of Supervisors of Shohola Twp.*, 614 A.2d 335, 337 (Pa. Cmwlth. 1992)).) That the Proposed Use would not be a treatment center under state regulations did not matter because, common pleas concluded, "[a]bsent preemption, it is error to use state regulations to redefine clearly-stated [z]oning [o]rdinance definitions." (*Id.* at 26 (citing *Kohl*, 108 A.3d at 971-72).) Finally, common pleas explained that the Board would have been derelict in its duties to grant the appeal based on the Proposed Use being a hospital because, if the Department did not issue a license, there would be a completed facility that was, now, not allowed in that location.

## II.    Discussion

On appeal,[3] Landowners argue that the Board Decision affirming the denial of the Application should be reversed because: (1) the Board applied an overly narrow standard and scope of review in deciding Landowners' appeal of Zoning Officer's decision; (2) the Board erred in narrowly construing ambiguous and undefined provisions of the Ordinance, respectively, the definition of "hospital"

---

[3] Where common pleas does not take additional evidence our "review is limited to determining whether the [zoning hearing board] committed an abuse of discretion or an error of law." *Kohl*, 108 A.3d at 967 n.6.

and the phrase "related treatment facilit[y]," to find that the Proposed Use was not permitted as a hospital or related treatment facility; and (3) the Board erred in concluding that the Proposed Use was a treatment center. The Board, the City, and Objectors (together, Appellees) respond that the Board exercised the appropriate review standard, giving deference to Zoning Officer's interpretation of the Ordinance's provisions, Landowners did not meet their burden of proving that the Proposed Use was permitted in the I District, and the Proposed Use was properly classified as a treatment center, which is not permitted in the I District. We address these issues in turn.

### A. Whether the Board Applied an Overly Narrow Standard and Scope of Review in Reviewing Zoning Officer's Decision Denying Landowners' Application.

#### 1. The Parties' Arguments

Landowners argue that the Board's review in this matter was overly restrictive, and it erred by not considering Landowners' evidence to determine whether Zoning Officer erred in denying the permit. In its Decision, Landowners assert, the Board characterized its review as "appellate" and applied the scope and standard of review applied by appellate courts when reviewing a land use appeal, notwithstanding that it took additional evidence. Landowners maintain that although the Board issued a decision with findings of fact and conclusions of law, as required by Section 908 of the MPC, 53 P.S. § 10908, the Board, using a narrow review standard, "minimize[d] and disregard[ed] critical testimony from Landowners' witnesses." (Landowners' Br. at 29.) According to Landowners, this deferential review implicated Landowners' due process rights because Landowners were unable to rebut the outside materials upon which Zoning Officer had *sua sponte* relied. Further, while Zoning Officer made a preliminary determination and

19

this interpretation may be given weight if it is not clearly erroneous, Landowners argue it is the Board that is ultimately charged with interpreting and applying the Ordinance. *Kohl*, 108 A.3d at 970. Landowners assert that *Orange Stones* is distinguishable and does not limit a landowner from presenting additional evidence or theories to a zoning hearing board but limits a zoning hearing board from acting *sua sponte* and outside the issues raised. The only difference between a zoning hearing board's appellate and original jurisdiction, Landowners argue, is that in an appeal, the applicant does not have to present the entire zoning permit case to establish that **each** aspect is not prohibited, only those parts of the case that are necessary to address the issues it is appealing.

Appellees argue that the Board applied the proper review standard as provided for in *Orange Stones*, which requires that courts and the Board "give close attention to the record and arguments given to [] Zoning Officer." (City's Br. at 17;[4] *see also* Board's Br. at 9-11.) In *Orange Stones*, this Court stated that the zoning hearing board had erred "by denying Orange Stones' appeal based upon an issue never considered by the zoning officer . . . and not otherwise raised by the Borough or an intervener." 991 A.2d at 998. The Court in *Orange Stones* further held, Appellees assert, that to allow an applicant to provide additional evidence or argument beyond that which was included in an application essentially nullifies the zoning officer's function and an appeal would essentially become the equivalent of applications for variances and special exceptions. The City and Objectors argue that, under *Orange Stones*, the Board is not an alternate forum from Zoning Officer's decision, but only an appellate body reviewing that decision in that capacity. Appellees argue Zoning Officer's interpretation was entitled to deference

---

[4] Objectors join in the arguments raised by the City. (Objectors' Br. at 8.)

20

because it was not clearly erroneous, and the Board asserts that it did not reject, but adopted, Zoning Officer's conclusions based on her review of the Application and materials pertinent to her making that determination.[5] (Board's Br. at 13, 15-16.) The Board argues that Landowners do not point to what evidence the Board "disregarded" and, contrary to Landowners' contentions, the Board reviewed the evidence and found it insufficient to establish that the Proposed Use qualified as a hospital. (*Id.* at 14-15.) The Board asserts that Landowners' failure to raise its alternative basis, that the Proposed Use was permitted as a related treatment facility, before Zoning Officer was "unacceptable" and rendered the claim waived. (*Id.* at 15.)

2. Analysis

The parties disagree on what standard and scope of review the Board should have exercised in reviewing the record and interpreting the Ordinance to determine whether the Application should have been denied. However, the Ordinance itself sets forth the standard the Board must apply when reviewing interpretations of the Ordinance's provisions. Section 1325.05 of the Ordinance provides that "[u]pon appeal from a decision by the Zoning Officer, **the Zoning Hearing Board shall decide** any question involving **the interpretation** of any provision of this

---

[5] The Board further argues that Landowners waived any argument regarding the appellate standard of review used because Landowners themselves asserted to the Board that this was the appropriate standard, citing a statement in Landowners' Memorandum of Law filed with the Board. While Landowners may have indicated that the issue under review was Zoning Officer's decision on the Application, it is apparent from the record, the presentation of evidence, and the arguments during the hearings before the Board, that Landowners wanted the Board to review all of the evidence, particularly where Zoning Officer relied on outside materials, and determine whether Zoning Officer should have found that the Proposed Use was permitted in the I District. Therefore, Landowners did not waive their challenges in this regard.

21

**Ordinance**, . . . where it is . . . alleged there is an error in any . . . determination made by the Zoning Officer in the enforcement of this Ordinance." Ordinance, § 1325.05 (emphasis added); (R.R. at 484a). That the Board has the final say on questions involving the interpretation of the Ordinance is consistent with Section 909.1(a)(3) of the MPC, which similarly provides that "**[t]he zoning hearing board shall** have exclusive jurisdiction to hear and **render <u>final</u> adjudications** in the following matters: . . . (3) **[a]ppeals** from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit . . . ." 53 P.S. § 10909.1(a)(3) (emphasis added). Section 754 of the Local Agency Law, 2 Pa.C.S. § 754, and Section 908(2) of the MPC, 53 P.S. § 10908(2), speak, respectively, to where the record is created in land use appeals and the obligation of a zoning hearing board to render findings of fact based on that record. Section 754 of the Local Agency Law sets forth the appellate review standard for courts in land use appeals and indicates that the record in such appeals is made in "the proceedings before the **local agency**," and the local agency is the zoning hearing board. 2 Pa.C.S. § 754 (emphasis added). Section 908(2) of the MPC requires that a **zoning hearing board make findings in its decision**, which per Section 909.1(a)(3) of the MPC, includes final adjudications on appeals from a zoning officer's denial of a permit, unless the requirement is waived by the **appellant**. 53 P.S. § 10908(2). When read together, these provisions support the conclusion proffered by Landowners: that a zoning hearing board, even sitting in its appellate capacity, is not to engage in a narrow review of a zoning officer's decision, based only on the materials offered to the zoning officer, but is required to make findings based on the proceedings conducted before the zoning hearing board. Further, while Appellees maintain that a narrow scope of review is warranted based on this

22

being an appeal before the Board, Section 754(a) authorizes a court of common pleas to hear the land use matter de novo "[i]n the event a full and complete record . . . was not made," 2 Pa.C.S. § 754(a), which provides for a broader scope of review than a zoning hearing board would have under Appellees' view. Thus, even if the "appellate" standard of review of Section 754(a) applied, the Board had to decide the issues presented to it **de novo** because the Board took additional evidence.

Landowners maintain that a broader review was particularly warranted because it is undisputed that **Zoning Officer** went **beyond** the four corners of the Application in denying the permit in the first instance and to limit the Board's consideration of evidence presented to rebut Zoning Officer's conclusions would violate Landowners' due process rights. Here, Zoning Officer looked at state regulations, Googled key terms, obtained the opinions of other City employees as to the nature of the Proposed Use, and reviewed **other materials** associated with **unrelated facilities**. She did so **without notifying** Landowners or giving them an opportunity to respond to her expanded review or submit additional materials in rebuttal. The Board's hearing was Landowners' **first opportunity** to respond and present evidence to challenge the "extra-record" materials upon which Zoning Officer relied, as well as her review and interpretation of state regulations. As Landowners argue in their brief, there is an "inherent absurdity [in] the City's position that any materials 'considered' by the Zoning Officer may be used during the proceedings, [but] Landowners were limited to those documents submitted with their permit [A]pplication." (Landowners' Br. at 57.) We agree with Landowners that accepting Appellees' arguments on the scope of the Board's review raises serious due process concerns if evidence and related arguments presented to rebut

23

Zoning Officer's denial were not allowed and were not considered by the Board in making its determination.

Appellees argue that *Orange Stones* limits the Board's ability to consider anything beyond that presented to Zoning Officer, but that case is distinguishable. In *Orange Stones*, the **zoning hearing board *sua sponte* exceeded the issue raised** in an appeal from the denial of a zoning permit **by affirming the permit denial for a reason that had not been previously asserted**. It did so after the record was closed, which precluded the landowner from addressing that issue in violation of its due process rights. The landowner argued on appeal the zoning hearing board erred in addressing an issue not considered by the zoning officer, **or otherwise raised by the borough or intervenor**, which would have had the effect of making a landowner resubmit its full application to the Board, rather than just addressing the issues claimed to be in error. *Orange Stones*, 991 A.2d at 998. This Court agreed the zoning hearing board erred in raising the issue *sua sponte*. *Orange Stones* includes language, cited by Appellees, describing the zoning officer as a gatekeeper and indicating that a landowner does not have to reestablish all of the requirements of an application in an appeal. However, that language and *Orange Stones*' holding do not mean that a zoning hearing board's review is limited as described by Appellees. Rather, it stands for the proposition that a zoning hearing board is to address the issues and evidence that are presented to it and not go outside the record to address an issue not raised. And, that doing so violates a landowner's due process rights, which is what Landowners argue occurred here. Essentially, *Orange Stones*' gatekeeper language "shelter[s] zoning hearing boards from the duty to render preliminary decisions as to zoning compliance." *Id.* Here, there was a preliminary determination, made with the use

24

of additional information not presented by Landowners, and Landowners sought the ability to submit evidence and have that evidence considered by the Board to determine if Zoning Officer's conclusions regarding the Proposed Use were correct. This is different from the situation in *Orange Stones*. To accept Appellees' argument that *Orange Stones* requires that only the record created before Zoning Officer be considered would preclude Landowners from addressing the extra-record evidence relied upon by Zoning Officer in violation of Landowners' due process rights which, in fact, contravenes *Oranges Stones*' holding.[6]

*McIntyre* and *Kohl*, upon which Appellees rely for the proposition that the Board **had** to adopt Zoning Officer's interpretation unless it was clearly erroneous, do not support such a broad interpretation. First, *McIntyre* did not involve a zoning hearing board's review of a zoning officer's interpretation, but an action in equity filed directly with a court of common pleas by a board of supervisors claiming the landowners were violating a setback requirement and seeking the court to direct the landowners to correct the violation. 614 A.2d at 336. In *McIntyre*, the only interpretation of the ordinance was that of the zoning officer. Thus, *McIntyre* does not set forth the level of deference a **zoning hearing board** is

---

[6] Appellees do not cite cases applying this narrow review standard to **zoning hearing boards** beyond *Orange Stones*. However, in cases such as *Smith v. Hanover Zoning Hearing Board*, 78 A.3d 1212, 1216 (Pa. Cmwlth. 2013), it was the zoning hearing board that took evidence to determine whether the landowners' action was consistent with or violated the relevant zoning ordinance. *Smith* involved an appeal from a zoning officer's denial of permits to erect billboards in which evidence was presented to the zoning hearing board, and the zoning hearing board then decided whether the billboards were permitted. In *Evans v. Lehman Township Zoning Hearing Board*, 496 A.2d 1270, 1274 (Pa. Cmwlth. 1985), we held that the **zoning hearing board would have to take evidence in an appeal** from a zoning officer's revocation of a permit in order to determine whether there was actually a violation.

25

to give a zoning officer's interpretation. Second, in *Kohl*, the Court stated that "it [was] **disputable** whether the [zoning hearing board] officially **adopted** [the zoning officer's] interpretation, the [zoning hearing board] **did not denounce it**, so the [zoning] officer's interpretation must be given **at least some weight** in the calculus." 108 A.3d at 970 (emphasis added). Such language does not require a specific level of deference in every case, but cautions that, if a zoning hearing board does not "denounce" a zoning officer's interpretation, that interpretation is entitled to "some weight." *Id.* Third, as stated above, Section 1325.05 of the Ordinance places the responsibility of interpreting the Ordinance **on the Board.** Ordinance, § 1325.05 (stating the "**Board shall decide any question involving the interpretation of any provision of this Ordinance** . . . where it is . . . alleged there is an error in any . . . determination made by the Zoning Officer . . . .") (emphasis added); (R.R. at 484a).

Based on the above principles and a review of the Board Decision, the Board too narrowly applied a scope and standard of review and did **not** consider the evidence presented to the Board, and, instead, limited its review to that which was included only in the Application, which was error. During the hearing, the Board's solicitor commented, after the City objected to the presentation of additional evidence, "[t]hat there are other things [presented], but **we're not going to talk about those other things because [Zoning Officer] didn't see them**." (R.R. at 615a (emphasis added).) Such comment suggests that there would be limited review of the evidence "because [Zoning Officer] did [not] see them." (*Id.*) Further, although the Board summarized some of the testimony presented, the Board expressly stated in its Decision that "[t]he materials constituting the [A]pplication failed to contain information** demonstrating that all of the

26

requirements for a 'hospital' under the regulations of the . . . Department . . . were met" and "did not describe any particular treatments requiring licensure by the . . . Department." (Board Decision at 27 (emphasis added); *see also* FOF ¶¶ 96-97, 139-40, 152-53.) It is unclear to the Court why the Board would have **emphasized** that this evidence **was not included** in the Application if it had not mattered in the Board's ultimate determination. This was not a situation as in *Orange Stones*, where the Board would exceed its review by *sua sponte* raising an issue. Rather, it is one where the Board did not consider evidence presented and issues raised by Landowners based on the Board's erroneous conclusion that, while Zoning Officer could consider materials outside the Application, Landowners could not present, and the Board could not consider, additional evidence to support Landowners' assertion that Zoning Officer's determination was incorrect.

Ordinarily, if a Board applied the incorrect standard and scope of review, we would remand for the proper standard and scope to be applied, but for the reasons set forth below, a remand is not necessary because the Board's interpretation of the Ordinance's definition of hospital was erroneous.

> *B. Whether the Board Erred in Interpreting the Term "Hospital" to Exclude the Proposed Use or in Concluding that the Proposed Use was not Permitted as a Related Treatment Facility under the Ordinance's Provisions.*

1. The Parties' Arguments

Landowners argue the Board erred in interpreting the Ordinance, and/or in adopting Zoning Officer's interpretation, which was based on Zoning Officer's disregard of the Application's description of the use as a psychiatric hospital and examination of regulations and materials that were outside of her scope of training, knowledge, and expertise, particularly where Zoning Officer never asked

Landowners any questions or for additional information. Landowners assert the Ordinance's definition of hospital, as interpreted by Zoning Officer and the Board, is circular because that definition requires licensing by the Department **before** zoning approval is given, but it is undisputed that licensing decisions are made **after** a facility is **constructed**. That this prerequisite cannot be met, Landowners argue, creates an ambiguity in the definition that must be resolved in Landowners' favor. To the extent the Board interpreted this provision to allow for evidence of **future** licensing to meet this requirement, Landowners argue that the Board disregarded overwhelming evidence that the Department, in addition to other agencies, would be licensing the Proposed Use once constructed. Landowners contend that common pleas' discussion of what could occur if the permit was approved, the Proposed Use was constructed, and there was no Department license issued, ignores that, in that circumstance, the City can refuse to issue a use and occupancy permit due to it being in violation of the Ordinance. "This demonstrates that the ultimate risk of [the Board's granting approval as a hospital] falls on Landowners, as they could proceed with constructing facility, seek licensure from the Department[,]" "have different licensure issued, and ultimately end up with a fully constructed building that cannot be used for its intended purpose." (Landowners' Br. at 41.)

Alternatively, Landowners argue that the Proposed Use falls within the broader permitted use of "Hospital or Surgery Center or Related Testing and Treatment Facilities." Other than hospital, the remaining terms are undefined, and, as such, Landowners assert, those terms should be broadly interpreted to allow for the least restrictive use for the landowner. In particular, Landowners argue that the Proposed Use will be a related treatment facility to a hospital, as, per Dr. Rifai's

28

expert opinion, it will work with the area's hospitals to accept and treat those hospitals' psychiatric patients. They note that Zoning Officer referred to the Proposed Use as a treatment facility throughout her letter denying the permit, even though a treatment facility **is authorized** under the broader use. According to Landowners, the Board did not fully address this issue, stating only that the broad use could not apply because no surgery would be performed at the Proposed Use. Landowners argue that, to the extent the Board and common pleas determined this possible use was waived, Landowners did not request a determination as to whether the Proposed Use was a "hospital" but a determination as to whether it is a "permitted use" on the Property. (R.R. at 1a.) They assert that this is sufficiently broad enough to allow a determination as to whether the Proposed Use falls into the broader permitted use, which was clearly raised before the Board in its memorandum of law submitted prior to the close of the record and addressed by the Board in its decision. Further, Landowners argue that accepting the waiver argument results in a zoning officer being able to review multiple uses to determine what use is applicable to the use described in an application, but a landowner not being able to assert an alternative use in response to the zoning officer's determination based on a use not asserted in an application.

Appellees respond that there was no error in the Board's determination that the Proposed Use did not qualify as a hospital because the testimony on licensing was equivocal and the issue of licensing would not be decided until after construction. The Board maintains that Landowners' arguments amount to a request for the Court to reweigh the evidence. As to the alternative permitted use asserted by Landowners, Appellees argue that Landowners waived their argument by not including this interpretation in the Application or during the evidentiary

29

hearings but first referencing it in its post-hearing brief and oral argument to the Board, to which the City's solicitor objected. Having not raised it before the Board, Appellees aver it is waived. *Mack v. Zoning Hearing Bd. of Plainfield Twp.*, 558 A.2d 616, 618 (Pa. Cmwlth. 1989). Notwithstanding the waiver, Appellees argue that the Proposed Use would not qualify as a permitted use under the broader category because the relationship with the area's hospitals was speculative and there was no physical connection with those hospitals. The Board further asserts that just because terms are undefined does not mean they are ambiguous and that terms are only ambiguous if they are susceptible to two reasonable interpretations, which is not the case here.

2. Analysis

Whether the Proposed Use is permitted in the I District requires the interpretation of the Ordinance's definition of the specific use, hospital, and/or the broader use category of "Hospital or Surgical Center or Related Testing and Treatment Center," which includes undefined terms. "[A] zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference," but the interpretation of an ordinance is a question of law, over which this Court exercises plenary review. *Kohl*, 108 A.3d at 968. In construing ordinances, the rules of statutory construction apply, and an ordinance's plain language, generally, provides the best indication of legislative intent. *Id.* Undefined terms are to be "given their plain meaning, and any doubt is resolved in favor of the landowner and least restrictive use of the land." *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004). "[W]here the words of [an] ordinance are ambiguous, courts construe the ordinance in favor of the landowner." *Kohl*, 108 A.3d at 968.

30

We begin with the specific use "hospital," which the Ordinance defined as "[a] building(s) which is licensed by the . . . Department . . . as a [h]ospital, and which involves the diagnosis and treatment of human ailments." Ordinance, § 1302.54; (R.R. at 72a). Appellees contend the Board's interpretation of hospital as excluding the Proposed Use was legally sound and was based on the lack of licensing by the Department, as there is no question that the Proposed Use would "involve[] the diagnosis and treatment of human ailments." *Id.* This interpretation of the Ordinance's definition, however, is problematic.

Under the Ordinance's plain language, in order for a use to qualify as a hospital and receive a zoning permit **to develop a property** as such, the proposed building **must be licensed** by the Department as a hospital. However, it is undisputed that **licensing** decisions **are not made** until **after** the building is **constructed**. Obviously, a building cannot be constructed and licensed as a hospital until **after** a zoning permit is issued. The Ordinance's definition of hospital, linking a use determination to a license that **cannot be granted until after completion of a project**, renders that definition ambiguous. Further, the Ordinance's definition, which links licensure to a "building," does not account for the possibility that certain treatments provided in the building or that certain parts of a building may be licensed by the Department, while others may not be. All of this supports Landowners' argument that there is an ambiguity in the Ordinance's language. An ordinance's language is ambiguous where it "is susceptible to more than one reasonable interpretation . . . or . . . is vague, uncertain, or indefinite." *Kohl*, 108 A.3d at 968. Here, the Ordinance's language is "uncertain or indefinite" because licensure is "uncertain or indefinite" until the building is constructed and

31

treatments ascertained. *Id.* Where ambiguity exists in an ordinance's language, "the language . . . should be interpreted . . . in favor of the landowner and against any implied extension of restrictions on a use of one's property." Section 603.1 of the MPC,[7] 53 P.S. § 10603.1; *Adams Outdoor Advert., LP. v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 484 (Pa. Cmwlth. 2006).

Through its conclusions that the Proposed Use does not meet the requirements to be a hospital under the Ordinance and will not be licensed by the Department, the Board has interpreted hospital as meaning that a zoning applicant must clearly and definitely establish that, at the zoning stage, the building is or will be licensed by the Department. However, this absolutist position is not reasonable or fair because it does not fully account for the nature of this licensing at the state level. *Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh*, 907 A.2d 494, 500 (Pa. 2006) (requiring that "zoning ordinances should receive a reasonable and fair construction"). The Board's interpretation and conclusion likewise do not account for there being different types of hospitals, including special hospitals, which are hospitals that treat "disorders within the scope of specific medical specialties or for the treatment of limited classifications of diseases in their acute or chronic stages on an inpatient basis of 24 or more hours." Section 101.4 of the Department's Regulations, 28 Pa. Code § 101.4. Further, the Department regulations that the Board and Zoning Officer found the Proposed Use would not satisfy clearly provide **the Department with the discretion** to grant exceptions from the regulations' requirements. Section 101.11 of the Department's Regulations, 28 Pa. Code § 101.11. It is for the **Department,** not the Board, to determine licensing questions. While, ordinarily, a zoning hearing board's

---

[7] Section 603.1 was added by Section 48 of the Act of December 21, 1988, P.L. 1329.

interpretation of its own ordinance may be entitled deference, *Kohl*, 108 A.3d at 968, the Board's **restrictive** reading of the Ordinance in this matter is inconsistent with the well-settled principle that ambiguities in an ordinance must be interpreted **in favor of the landowner**. As noted by Landowners, it is ultimately they that bear the risk in these circumstances because should the Proposed Use be approved by the Board as a hospital use and constructed, and they do not obtain the necessary licensure, Landowners will have a structure that cannot be occupied and used. Having failed to interpret the Ordinance's ambiguous language in Landowners' favor, the Board erred in finding that the Proposed Use would not be a hospital use under the Ordinance.[8]

### III. Conclusion

For the foregoing reasons, the Board erred in applying an overly narrow scope and standard of review to Landowners' challenge to Zoning Officer's denial of a zoning permit for the Proposed Use, which resulted in the Board not considering evidence that had not been included in the Application, despite Zoning Officer having examined materials similarly not included in the Application. Further, the Board erred in narrowly construing ambiguous language in the Ordinance, the definition of hospital, to exclude the Proposed Use rather than

---

[8] Because we conclude that the Board erred in finding that the Proposed Use would not be a "hospital" under the Ordinance, we will not address whether the Proposed Use could be permitted as a "related treatment facility" or other arguments related to this issue. For the same reason, we agree with Landowners that the Board erred in finding that the Proposed Use was a "treatment center" because the Ordinance explicitly excludes hospitals from the definition of a "treatment center." Ordinance, § 1302.127 (defining "treatment center" as "[a] use (other than a . . . hospital) . . ."); (R.R. at 72a).

broadly in Landowners' favor as is well-settled by our precedent. Accordingly, common pleas' Order, which affirmed the Board Decision, is reversed.


_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bethlehem Manor Village, LLC and : 
Pennsylvania Venture Capital, Inc., : 
                         Appellants : 
                                : 
            v. :   No. 1792 C.D. 2019
                                : 
Zoning Hearing Board of the : 
City of Bethlehem : 

## O R D E R

**NOW**, January 29, 2021, the Order of the Court of Common Pleas of Northampton County, entered in the above-captioned matter, is **REVERSED**.

 

                                                _____

                                                **RENÉE COHN JUBELIRER,** Judge